# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| JING KONG,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>JOHNSON & JOHNSON and<br>ETHICON, INC.,<br><br>　　　　　　　　Defendant. | Civil Action No.: 3:23-cv-03091-MAS-TJB<br><br>**Motion Returnable:**<br>**November 20, 2023** |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT OR, ALTERNATIVELY, TO STRIKE CERTAIN ALLEGATIONS

On the Brief:

Robin H. Rome, Esq.
Iman A. Wells, Esq.
**NUKK-FREEMAN & CERRA, P.C.**
26 Main Street, Suite 202
Chatham, New Jersey 07928
Tel: (973) 665-9100
Fax: (973) 665-9101
*Attorneys for Defendants Johnson & Johnson and Ethicon, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ...................................................................................1

RELEVANT FACTUAL BACKGROUND...............................................3

    A. The Parties ....................................................................................3

    B. Plaintiff's Employment With Ethicon .........................................4

    C. Plaintiff Discloses Her Pregnancy To Her Ethicon Colleagues ....................5

    D. Plaintiff Is Terminated As A Part Of A Reduction-In-Force ("RIF").............5

    E. Plaintiff's Irrelevant And Inflammatory Allegations Regarding J&J .............5

PROCEDURAL HISTORY.....................................................................7

LEGAL ARGUMENT ............................................................................8

I.     PLAINTIFF'S CLAIMS AGAINST ETHICON AND J&J FAIL AS
      A MATTER OF LAW UNDER FED. R. CIV. P. 12(B)(6) .........................8

    A. Motion To Dismiss Standard..............................................8

    B. The Amended Complaint Must Be Dismissed In Its Entirety
       Because It Relies On Improper Group Pleading ................................10

    C. J&J Is Not A Proper Defendant In This Case Because Plaintiff
       Was Never Employed By J&J..............................................12

    D. Plaintiff's Scant Allegations Against Ethicon Fail To Meet The
       Pleading Standard................................................................15

II.   THE IMPERTINENT, IMMATERIAL AND SCANDALOUS
      ALLEGATIONS IN THE COMPLAINT MUST BE STRICKEN ............. 16

            A. Motion To Strike Standard ................................................................ 16

            B.  The Court Should Strike Paragraphs 1-5 And 75 ............................. 17

CONCLUSION ...................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

Ashcroft v. Iqbal,
    556 U.S. 662 (2009).................................................................................9

Barefoot Architect, Inc. v. Bunge,
    632 F.3d 822 (3d Cir. 2011)...................................................................9

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007)....................................................................9, 10, 11

Bristol–Myers Squibb Company v. Ivax Corporation,
    77 F. Supp.2d 606 (D.N.J. 2000) .........................................................17

Campbell v. City of New Brunswick,
    No. CV165941MASTJB, 2018 WL 2234899 (D.N.J. May 16, 2018)...............10

Fowler v. UPMC Shadyside,
    578 F.3d 203 (3d Cir. 2009)...................................................................8

Fulton v. Johnson & Johnson Pharm. Rsch. & Dev., LLC,
    No. CIV.A. 05-819FLW, 2008 WL 544668 (D.N.J. Feb. 26, 2008)..................14

Garlanger v. Verbeke,
    223 F. Supp.2d 596 (D.N.J. 2002) .......................................................17

Green v. 712 Broadway, LLC.,
    No. CV 13–2277 (JAP), 2018 WL 2754075 (D.N.J. June 8, 2018)..................10

Gunther v. Shelter Grp.,
    No. CIV. 13-04739 RMB, 2014 WL 3869940 (D.N.J. Aug. 7, 2014)...............15

Ingris v. Borough of Caldwell,
    No. CV 14-855, 2015 WL 3613499 (D.N.J. June 9, 2015)................................11

Japhet v. Francis E. Parker Mem'l Home, Inc.,
    No. CIV.A. 14-01206 SRC, 2014 WL 3809173 (D.N.J. July 31, 2014)......11, 16

Johnson v. Cook Composites and Polymers, Inc.,
    2000 WL 249251 (D.N.J. March 3, 2000)............................................................14

Kost v. Kozakiewicz,
    1 F.3d 176 (3d Cir. 1993).....................................................................................8

Martin v. Safeguard Scientifics, Inc.,
    17 F. Supp.2d 357 (E.D. Pa.1998) ...............................................................13, 14

Marzano v. Computer Science Corp., Inc.,
    91 F.3d 497 (3d Cir. 1996)...................................................................................13

Mellon Bank, N.A. v. Metro Communications, Inc.,
    945 F.2d 635 (3d Cir. 1991).................................................................................13

Patel v. Cigna Corp.,
    No. 02-6141, 2005 WL 1656930 (D.N.J. July 12, 2005) .....................................12

Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,
    998 F.2d 1192 (3d Cir. 1993)................................................................................4

Tonka Corp. v. Rose Art Industries, Inc.,
    836 F. Supp. 200 (D.N.J. 1993) ..........................................................................17

Whelan v. Teledyne Metalworkers Prod.,
    No. CA NO. 01-1316, 2005 WL 2240078 (W.D. Pa. Sept. 14, 2005)...............14

## **RULES**

Fed. R. Civ. P. 8 ..................................................................................... Passim

Fed. R. Civ. P. 12 ................................................................................... Passim

## **STATUTES:**

N.J.S.A. 10:5-12(a) ....................................................................................12

N.J.S.A. 34:11B-9 ......................................................................................12

## **<u>OTHER AUTHORITIES</u>**

29 U.S.C. § 2615 .................................................................................................12

42 U.S.C.A. § 2000e-2 (a) ...................................................................................12

## **INTRODUCTION**

Plaintiff Jing Kong ("Plaintiff" or "Kong"), a former employee of Defendant Ethicon, Inc. ("Ethicon"), filed this employment-related lawsuit following her termination as part of a reduction-in-force ("RIF"). The Amended Complaint – like Plaintiff's original Complaint – is peppered with impermissible group pleading and contains virtually no allegations against her former employer, Ethicon, other than threadbare recitals of the cited causes of action. Instead, Plaintiff directs her allegations against Johnson and Johnson ("J&J"), a distinct legal entity that never employed Plaintiff. Courts in the Third Circuit routinely reject this type of improper group pleading as a violation of <u>Fed. R. Civ. P.</u> 8. Because Plaintiff's defective pleading fails to provide notice of the specific grounds for Plaintiff's claims against **each** Defendant, the Court must dismiss the Amended Complaint in its entirety.

Linked to her improper group pleading, Plaintiff's claims against J&J and Ethicon fail as a matter of law. As a threshold matter, to bring actionable employment claims against J&J, Plaintiff must establish that J&J was her employer under the applicable statutes – which she cannot do. Relatedly, because has chosen to focus on J&J and fails to plead any specific substantive allegations against the entity that actually employed her, Plaintiff's Amended Complaint falls woefully short of the pleading standard required to maintain viable claims against Ethicon.

The Amended Complaint is further replete with irrelevant and incendiary allegations that do not tend to prove or support Plaintiff's causes of action. The sole purpose of these superfluous allegations is to inflame and to portray J&J – which, again, was **not** Plaintiff's employer – in a negative light. For example, the Complaint contains allegations generally (and inaccurately) characterizing J&J as an entity that makes empty promises to women and mothers, and one that engages in a "forced ranking system" with the intention of weeding out female employees. Not only are these accusations conclusory and specious, but they serve no valid purpose as they do not directly relate to Plaintiff's specific claims, which all stem from her termination as part of the RIF and the purported interference with her potential future leave. Since these irrelevant and inflammatory allegations are clearly pled to malign and unduly prejudice J&J, they must be stricken from the Complaint.

With her Amended Complaint, Plaintiff had the opportunity to address these pleading shortcomings but failed to do so. Accordingly, Defendants respectfully request that the Court dismiss Plaintiff's Amended Complaint against all Defendants in its entirety pursuant to <u>Fed. R. Civ.</u> P. 12(b)(6) or, alternatively, to strike certain allegations, as detailed herein.

## RELEVANT FACTUAL BACKGROUND[1]

### A. The Parties

Plaintiff is a former employee of Ethicon and a resident of New Jersey. (Amended Complaint, DKT. 23 (hereinafter "Am. Compl."), ¶ 18). Plaintiff claims that, after disclosing her pregnancy, she was terminated in the RIF in violation of the New Jersey Law Against Discrimination ("NJLAD") (Counts Two and Three) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), as amended by the Pregnancy Discrimination Act ("PDA") (Counts Six and Seven), and she experienced interference and retaliation under the Family and Medical Leave Act ("FMLA") (Count One) and New Jersey Family Medical Leave Act ("NJFLA") (Counts Four and Five).

The Defendants in this action are members of the Johnson & Johnson Family of Companies. J&J, the parent company of numerous subsidiaries in various health care related areas with its principal place of business located at One Johnson & Johnson Plaza, New Brunswick, New Jersey. (Am. Compl., ¶ 19). J&J is a "holding company" with "operating companies" one of which is Ethicon. See Johnson &

---

[1] Although Plaintiff's allegations (except for conclusory allegations) are assumed to be true for the purposes of this Motion to Dismiss only, Defendants do not concede their accuracy and expressly reserve the right to dispute any and all of Plaintiff's factual allegations in the Amended Complaint. Notably, the vast majority of the allegations in the Amended Complaint are not relevant to the motion herein.

Johnson Form 10-K, https://johnsonandjohnson.gcs-web.com/static-files/06bc3388-603b-4768-bf95-e6d43fda9fd.[2]   Plaintiff does not allege that she was ever an employee of J&J, including during the relevant time period of her Amended Complaint.   (Am. Compl., ¶¶ 18, 21, 27).   Nevertheless, although J&J never employed Plaintiff, she inexplicably named J&J as a Defendant.   Ethicon, Plaintiff's actual employer, is a privately held wholly owned subsidiary of J&J with its principal place of business located at 1000 US-202, Raritan, New Jersey.   (Am. Compl., ¶ 20).

### B.  <u>Plaintiff's Employment With Ethicon</u>

In or about 2018, Ethicon hired Plaintiff as a Senior Scientist.   (Am. Compl., ¶¶ 18, 27).   In this role, she engaged in various research, studies, and experiments for Ethicon.   (Am. Compl., ¶¶ 29-31).   Despite alleging that she was employed by Ethicon, not much else can be ascertained about Plaintiff's employment because she directs virtually all of her allegations to Ethicon's parent company, J&J.   (<u>See generally</u> Am. Compl.).   During the times material to her allegations, Plaintiff

---

[2] J&J's Form 10-K states that J&J is a "holding company, with operating companies conducting business in virtually all countries of the world."   The Form 10-K is a public record that may be properly considered on a motion to dismiss.   Moreover, as it relates to the facts surrounding Plaintiff's employment relationship with J&J (or the lack thereof) it is integral to the Amended Complaint.   <u>See</u> <u>Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.")

reported to Yijun Lu, Associate Director ("Lu"), Scott Ciarrocca, Director Advanced Evaluation R&D ("Ciarrocca"), and Ying Jiang, Principal Scientist ("Jiang"). (Am. Compl., ¶¶ 6, 32).

### C. **Plaintiff Discloses Her Pregnancy to Her Ethicon Colleagues**

Plaintiff alleges that in December 2022, she informed Ciarrocca that she was pregnant. (Am. Compl., ¶ 45). Plaintiff further alleges that at an unspecified time, she informed Lu of her pregnancy. (Am. Compl., ¶ 47). She claims that Ciarrocca and Lu were either "shocked" and/or "concerned" about the amount of responsibilities Plaintiff would be required to undertake in light of her pregnancy and inquired about what type of support she would receive, including whether her parents would be assisting her. (Am. Compl., ¶¶ 45-49). Plaintiff described Lu as being "genuinely concerned for Plaintiff's personal welfare." (Am. Compl., ¶ 51).

### D. **Plaintiff Is Terminated as Part of a Reduction-In-Force ("RIF)**

In February 2023, months after Plaintiff purportedly disclosed her pregnancy, there was alleged "messaging" about prospective layoffs as part of a RIF. (Am. Compl., ¶ 59). On March 1, 2023, Plaintiff was notified that she was being terminated as part of the resulting RIF. (Am. Compl., ¶ 5, 54).

### E. **Plaintiff's Irrelevant and Inflammatory Allegations Regarding J&J**

The Amended Complaint contains a host of irrelevant allegations directed toward J&J – an entity that was never Plaintiff's employer. These generalized and

conclusory allegations clearly are intended to malign J&J as they do not support – or in most cases even relate to – Plaintiff's claims that she was terminated as part of a RIF due to discriminatory or retaliatory animus.  These allegations include the following:

> **Paragraph 1**: As part of its marketing and promotional efforts to retain highly qualified female employees, J&J boasts on its website about its alleged dedication to supporting female employees in the workplace and "improving the well-being of mothers":

> 9 Ways Johnson & Johnson Has Supported Women Since 1886

> Learn how the world's largest and most broadly based healthcare company has been empowering female employees, scientists and leaders -- and improving the well-being of mothers around the world, since its founding 137 years ago. Then again, this is hardly surprising for a company whose first 14 employees included eight women -- and whose workforce today is nearly 50% female. Take a look at a few important ways Johnson & Johnson has worked to advance and celebrate women both inside and outside the company for over a century.
> **1908.** That's the year Johnson & Johnson hired its first female scientist -- no small feat during an era in which fewer than 3% of women attended college.

> **Paragraph 2:** In countless articles, J&J aggressively markets to the public about the ways in which it is an alleged "trailblazer" for female employees, such as by claiming that "**Johnson & Johnson Is on a Mission to Ignite the Power of Women**."

> **Paragraph 3**: J&J urges the public, as well as potential and current employees, to read about its recent signing of the "Employee Well-Being & Mental Health Pledge" from the Society for Human Resource Management, which J&J touts as its "commitment to investing in employee health."

> **Paragraph 4**: It is no secret that maternity leave related benefits are among the most coveted by talented female employees. Because safeguarding

6

employment and income security during pregnancy and after childbirth are critical measures to the achievement of gender equality at work, it is not surprising that J&J publicly makes the promises it does to attract the best talent.

**Paragraph 5**: This makes J&J's breach of such promises even more reprehensible.

**Paragraph 75**: Such a system of "forced ranking" has been attributed to discrimination against female employees, who as compared to their male peers, are systemically undervalued and ranked lower, resulting in less promotions and lower pay rates. It is common knowledge that "forced ranking," also called "rank and yank," has been widely criticized because research has shown how the system inherently institutionalizes bias and devalues groups of employees, such as women.  Upon information and belief, J&J knows that its forced ranking system has been accused of systematically undermining the advancement of its female employees, yet it continues to rely upon it, and based on at least one of its "explanations" for her firing, considered Ms. Kong's forced rank 2020 yearend review when terminating her.

## **PROCEDURAL HISTORY**

On or about June 5, 2023, Plaintiff filed a five-count Complaint against J&J and Ethicon in the District of New Jersey alleging: interference and retaliation in violation of the FMLA (Count One); discrimination based on gender and sex in violation of the NJLAD (Count Two); retaliation in violation of the NJLAD (Count Three); discrimination in violation of the NJFLA (Count Four); and retaliation in violation of the NJFLA (Count Five).  (See DKT. 1).  J&J was served with the Complaint on June 27, 2023, and Ethicon was served with the Complaint on July 10, 2023.  (See DKTs. 9-10).

On June 14, 2023, Defendants submitted an application for a Clerk's Order extending the time by which J&J and Ethicon were required answer, move, or otherwise respond to the Complaint by fourteen (14) days, up to and including August 1, 2023 and August 14, 2023, respectively.  (DKTs. 11-12).  On July 17, 2023, the Clerk's extensions were granted.

On August 1, 2023, in lieu of an Answer, Defendants filed a Motion to Dismiss or, Alternatively, to Strike Certain Allegations.  (DKT. 17).  On September 7, 2023, Plaintiff filed a Motion for Leave to Amend the Complaint.  (DKT. 20). Defendants did not oppose Plaintiff's Motion.  (DKT. 21).  On October 12, 2023, Plaintiff filed the Amended Complaint.  (DKT. 23).  Defendants now hereby move to dismiss the Amended Complaint in its entirety or, alternatively, to strike certain allegations under Fed. R. Civ. P. 12(f).

## LEGAL ARGUMENT

### POINT ONE

### PLAINTIFF'S CLAIMS AGAINST ETHICON AND J&J FAIL AS A MATTER OF LAW UNDER FED. R. CIV. P. 12(B)(6)

#### A. Motion to Dismiss Standard

The purpose of a Fed. R. Civ. P. 12(b)(6) motion is to "test the sufficiency of the allegations contained in the complaint."  See Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must plead factual allegations sufficient "to raise a right to relief above

the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The "mere possibility of misconduct" is not enough.  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  Rather, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Id. at 678 (quotation and citation omitted).  Such factual allegations must be more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Id.

When evaluating a motion to dismiss for failure to state a claim, the court must conduct a "two-part analysis."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009).  First, the court must identify and disregard all "legal conclusions" or "naked assertions."  Id.; see also Twombly, 550 U.S. at 555 (the grounds upon which the claim rests must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action").  Second, the court must determine whether the remaining factual allegations state a claim for relief that is "plausible on its face."  Barefoot Architect, Inc. v. Bunge, 632 F.3d 822, 826 (3d Cir. 2011) (quoting Iqbal at 1949; Twombly at 544).  A claim has facial plausibility if, after looking at the complaint, the court can draw a reasonable inference that the defendant is liable for the misconduct alleged.  Twombly, 550 U.S. at 556.  "Where a complaint pleads facts that are 'merely consistent with' liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Id. at 555.

Here, Plaintiff's Amended Complaint is largely a group pleading directed at J&J.  However, J&J cannot be liable for Plaintiff's causes of actions because it was not Plaintiff's employer under the applicable statutes (the NJLAD, Title VII, FMLA, and NJFLA).  Conversely, since Plaintiff does not plead any substantive allegations against her actual employer, Ethicon, she fails to state viable claims as a matter of law.  As such, Plaintiff's Complaint must be dismissed against both entities under Fed. R. Civ. P. 12(b)(6).

## B. <u>The Amended Complaint Must Be Dismissed In Its Entirety Because It Relies On Improper Group Pleading</u>

Throughout the Amended Complaint, Plaintiff relies on group pleading by impermissibly lumping Defendants J&J and Ethicon together.  (<u>See</u> Am. Compl., generally).  <u>Fed. R. Civ. P.</u> 8 "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  <u>Twombly,</u> 550 U.S. at 555 (internal citations and quotation omitted).  However, a "[c]omplaint's failure to differentiate between defendants can warrant dismissal in and of itself under Fed. R. Civ. P. 8(a)."  <u>Campbell v. City of New Brunswick</u>, No. CV165941MASTJB, 2018 WL 2234899, at *3 (D.N.J. May 16, 2018).  Courts within the District of New Jersey routinely dismiss such group pleading complaints for failure to state claims under <u>Fed. R. Civ. P.</u> 12(b)(6).  <u>See</u> <u>Green v. 712 Broadway, LLC</u>, No. CV 13–2277 (JAP), 2018 WL 2754075, *3 (D.N.J. June 8, 2018) ("Courts within this district have not

permitted complaints with group pleadings to go forward.") (citing <u>Sheeran v. Blyth Shipholding S.A.</u>, No. CV 14-5482 (JBS/AMD), 2015 WL 9048979, *3 (D.N.J. Dec. 16, 2015)); <u>see also</u> <u>Ingris v. Borough of Caldwell</u>, No. CV 14-855, 2015 WL 3613499, at *5 (D.N.J. June 9, 2015) ("[T]o the extent Plaintiff seeks to lump several defendants together without setting forth what each particular defendant is alleged to have done, he has engaged in impermissibly vague group pleading.").

Plaintiff blatantly ignores <u>Fed. R. Civ. P.</u> 8.  Although Plaintiff recognizes that J&J and Ethicon are separate entities (Am. Compl., ¶¶ 20-21), she fails to delineate her allegations against each entity in her pleading.  The breadth of Plaintiff's factual allegations are directed toward J&J – an entity that never employed Plaintiff.  There are virtually no substantive allegations against Plaintiff's actual employer, Ethicon. This does not comply with Plaintiff's obligation to give each Defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests."  <u>See</u> <u>Twombly</u>, 550 U.S. at 555.  Plaintiff's failure cannot be ignored by the Court.

Similar improper pleading was addressed in <u>Japhet v. Francis E. Parker Mem'l Home, Inc.</u>, No. CIV.A. 14-01206 SRC, 2014 WL 3809173, at *2 (D.N.J. July 31, 2014).  There, the court dismissed claims under the FMLA and NJLAD against an individual defendant because plaintiff failed to plead "any conduct specifically undertaken by" that defendant.  <u>Japhet</u>. 2014 WL 3809173, at *2. In dismissing the complaint, the court made clear that plaintiff's allegations that "'Defendants'

11

undertook certain illegal acts—without more—injects an inherently speculative nature into the pleadings, forcing both the Defendants and the Court to guess who did what to whom when. Such speculation is anathema to contemporary pleading standards."

Because Plaintiff's Amended Complaint is an impermissible group pleading that violates <u>Fed. R. Civ. P.</u> 8, it must be dismissed.

## C. <u>J&J Is Not A Proper Defendant In This Case Because Plaintiff Was Never Employed By J&J</u>

The existence of an employment relationship is a required prerequisite for Plaintiff's claims under the NJLAD, Title VII, FMLA, and NJFLA.  <u>See</u> N.J.S.A. 10:5-12(a) (authorizing a cause of action only against employers, employment agencies, and labor organizations); 42 U.S.C.A. § 2000e-2 (a) (making it unlawful for an "employer" to engage in discrimination based on an employee's race, color, religion, sex, or national origin); <u>Patel v. Cigna Corp.</u>, No. 02-6141, 2005 WL 1656930, at *3 (D.N.J. July 12, 2005) ("In order to bring a claim under Title VII or NJLAD, a plaintiff must be classified as an 'employee' under the statutory framework."); 29 U.S.C. § 2615 ("It shall be unlawful for any employer to interfere with, restrain or deny the exercise or attempt to exercise, any right under the subchapter..."); <u>N.J.S.A.</u> 34:11B-9 (making it unlawful for an "employer" to "interfere with, restrain or deny the exercise of, or the attempt to exercise, the rights provided under this act or to withhold the benefits provided for under this act" or

"discharge or discriminate against an individual for opposing a practice made unlawful by this act").

Plaintiff has properly pled that she was a Senior Scientist at Ethicon, a subsidiary of J&J. (Am. Compl., ¶¶ 18, 27). As the Third Circuit has recognized, subsidiaries are "separate entit[ies]" and "when a subsidiary hires employees, there is a strong presumption that the subsidiary, not the parent company, is the employer." See Marzano v. Computer Science Corp., Inc., 91 F.3d 497, 513 (3d Cir. 1996) (quoting Johnson v. Flowers Indus., Inc., 814 F.2d 978 (4th Cir.1987)); see also Martin v. Safeguard Scientifics, Inc., 17 F. Supp.2d 357, 363 (E.D. Pa.1998) (noting the "strong presumption that a parent is not the employer of its subsidiary's employees"); Mellon Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635, 643 (3d Cir. 1991) ("[T]here is a presumption that a corporation, even when it is a wholly owned subsidiary of another, is a separate entity."). Indeed, "courts have found parent corporations to be employers only in extraordinary circumstances." Marzano, 91 F.3d at 513 (quoting Johnson, 814 F.2d at 981); Martin, 17 F.Supp.2d at 363 (same).

To determine whether a parent company is an "employer" in the context of employment discrimination, courts within the Third Circuit use the four-factor "integrated enterprise" test. See Martin, 17 F.Supp.2d at 363 (concluding that the integrated enterprise test is essentially the same as the Third Circuit's veil-piercing

analysis in <u>Marzano</u>); <u>see also</u> <u>Johnson v. Cook Composites and Polymers, Inc.</u>, 2000 WL 249251 at *3–4 (D.N.J. March 3, 2000) (same).  The four factors are: "(1) functional integration of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership."  <u>Martin</u>, 17 F.Supp.2d at 362. "Although no one factor of the integrated enterprise test is conclusive, the extent to which labor relations are centralized is the most significant."  <u>Fulton v. Johnson & Johnson Pharm. Rsch. & Dev., LLC</u>, No. CIV.A. 05-819FLW, 2008 WL 544668, at *7 (D.N.J. Feb. 26, 2008).  Here, other than alleging that J&J is the parent company and Ethicon is a subsidiary (Am. Compl., ¶¶ 19-20), the Amended Complaint lacks any allegations establishing that these two distinct legal entities are an integrated enterprise sufficient to meet the "extraordinary circumstances" required to hold the parent company – J&J – liable as Plaintiff's employer.

Plaintiff does not allege that J&J exercises control over the day-to-day employment decisions of Ethicon or that J&J has the same management and operations as Ethicon.  As to the last factor, common ownership, the mere fact that Ethicon is a wholly-owned subsidiary of J&J alone is not sufficient to render these two functionally separate entities as one integrated enterprise.  <u>See</u>, <u>e.g.</u>,<u>Whelan v. Teledyne Metalworkers Prod.</u>, No. CA NO. 01-1316, 2005 WL 2240078, at *13 (W.D. Pa. Sept. 14, 2005) ("[C]ommon ownership and de minimus coordination are insufficient reasons on which to assign liability."); <u>Martin</u>, 17 F.Supp.2d at 368.  To

14

find otherwise would render the Third Circuit's requirement of "extraordinary circumstances" a nullity and the "strong presumption" of treating the parent separate and apart from the subsidiary as a mere formality.  Accordingly, all claims against J&J must be dismissed.  See Gunther v. Shelter Grp., No. CIV. 13-04739 RMB, 2014 WL 3869940, at *9 (D.N.J. Aug. 7, 2014) (granting parent company's motion to dismiss where plaintiff failed to allege sufficient facts to establish the parent and subsidiary were "so interrelated and integrated in their activities, labor relations and management' that [the Court] should pierce the corporate veil").

In short, because J&J never employed Plaintiff, Plaintiff is foreclosed from pursuing any claims against J&J and such claims must be summarily dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### D. Plaintiff's Scant Allegations Against Ethicon Fail to Meet The Pleading Standard

Other than alleging that Plaintiff is a former Senior Scientist at Ethicon and that Ethicon is a subsidiary of J&J and meets the definition of "employer" under the statutes cited in the Amended Complaint, Plaintiff does not direct any substantive allegations against Ethicon.  Instead, in pleading her causes of action, Plaintiff utilizes the term "Defendants," relies on formulaic recitations of certain elements, and includes Ethicon in name only.  (Am. Compl., ¶¶ 18, 20, 27, 82-83, 85, 87-90, 92-94, 96-98, 101-102, 107-110, and 113-116).  These bare-bones references to Ethicon do not pass muster under Fed. R. Civ. P. 12(b)(6) as actionable claims.  See

Japhet, 2014 WL 3809173, at *2 (dismissing one of the named defendants where plaintiff "seem[ed] to confuse her bald legal conclusions and threadbare allegations against 'Defendants' generally with factual allegations of misconduct sufficient to plausibly give rise to each defendant's specific liability").

Because the Complaint is devoid of factual allegations against Ethicon that give rise to viable causes of action (as opposed to conclusory statements and improper group pleading), Plaintiff's causes of action against Ethicon must be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6).

## POINT TWO

## THE IMPERTINENT, IMMATERIAL, AND SCANDALOUS ALLEGATIONS IN THE COMPLAINT MUST BE STRICKEN

### A. Motion to Strike Standard

Fed. R. Civ. P. 8(a)(2) requires that a complaint set forth "a *short and plain* statement of the claim showing that the pleader is entitled to relief." (Emphasis added.)  Fed. R. Civ. P. 12(f) reinforces the basic requirements of Fed. R. Civ. P. 8(a)(2) by empowering courts to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Here, it would be contrary to the purposes of Fed. R. Civ. P. 8(a)(2) to require Defendants to respond to immaterial and inflammatory allegations in the Amended Complaint, and they should be stricken by the Court.

The purpose of a motion to strike is to simplify the pleadings and save time and expense by excising "any redundant, immaterial, impertinent, or scandalous matter" that will not have any possible bearing on the outcome of the litigation. <u>See</u> <u>Bristol–Myers Squibb Company v. Ivax Corporation</u>, 77 F. Supp.2d 606, 619 (D.N.J. 2000) (citing <u>Glenside West Corp. v. Exxon Co., U.S.A.</u>, 761 F. Supp. 1100, 1114–15 (D.N.J. 1991)).  Motions to strike are granted where the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." <u>Tonka Corp. v. Rose Art Industries, Inc.</u>, 836 F. Supp. 200, 217 (D.N.J. 1993).

### B. <u>The Court Should Strike Paragraphs 1-5 and 75</u>

As detailed in the Relevant Factual Background, Plaintiff makes numerous scandalous, inflammatory, and irrelevant allegations about J&J.  <u>See</u> Relevant Factual Background, Section F and Am. Compl., ¶¶ 1-5, 75.  Paragraphs 1-5 of the Amended Complaint, which purport to address J&J's "marketing and promotional efforts," are not allegations of fact that support Plaintiff's claims that she was terminated as part of a RIF due to discriminatory or retaliatory animus.  Rather, they are generalized, sensationalized, and conclusory statements included for the sole purpose of painting J&J in a disparaging light.  Likewise, Plaintiff's speculative allegations in Paragraph 75 about J&J's "forced ranking" system – which Plaintiff clearly states is based "upon information and belief" – is nothing more than a

transparent attempt to deride J&J.   Again, these allegations have nothing to do with Plaintiff's claims, especially since J&J was not even Plaintiff's employer.   On the contrary, their sole function is to confuse the issues and generally smear J&J.   These types of impertinent and irrelevant allegations, which are clearly prejudicial, are ripe for dismissal on a motion to strike.   Garlanger v. Verbeke, 223 F. Supp.2d 596, 609 (D.N.J. 2002) ("The purpose of a motion to strike is to simplify the pleadings and save time and expense by excising from a plaintiff's complaint any redundant, immaterial, impertinent or scandalous matter which will not have any possible bearing on the outcome of the litigation.")

Accordingly, J&J respectfully requests that this Court strike Paragraphs 1-5, and 75 from the Amended Complaint in accordance with Fed. R. Civ. P. 12(f).

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion to Dismiss the Amended Complaint in its entirety.   Alternatively, Defendants respectfully request that the Court strike Paragraphs 1-5 and 75 from the Amended Complaint, with prejudice.

Respectfully Submitted,

NUKK-FREEMAN & CERRA, P.C.
*Defendants Johnson & Johnson and Ethicon, Inc.*

Robin H. Rome, Esq.
Iman A. Wells, Esq.
26 Main Street, Suite 202
Chatham, New Jersey 07928
Tel: (973) 665-9100
Fax: (973) 665-9101
E-Mail:  rrome@nfclegal.com
             iwells@nfclegal.com

Dated:  October 26, 2023