**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
--------------------------------------------------------------- X

JING KONG,                                              :
                                                        :
                              Plaintiff,                :     Civil Action No. 3:23-cv-03091-MAS-TJB
                                                        :
                v.                                      :
                                                        :     Motion Day: December 18, 2023
JOHNSON & JOHNSON and ETHICON, INC.                     :
                                                        :
                              Defendants.               :
--------------------------------------------------------------- X

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' <u>MOTION TO DISMISS</u>

<br>

**WIGDOR LLP**

Jeanne M. Christensen
Kassandra Vazquez

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
jchristensen@wigdorlaw.com
kvazquez@wigdorlaw.com

*Counsel for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT .................................................................................1

FACTUAL ALLEGATIONS ......................................................................................3

MOTION TO DISMISS STANDARD ........................................................................4

ARGUMENT ..............................................................................................................6

I.      MS. KONG ADEQUATELY ALLEGED THAT J&J AND ETHICON ARE
        EMPLOYERS .................................................................................................6

II.     ALLEGATIONS OVERWHELMINGLY PLACE DEFENDANTS ON NOTICE
        THAT THEY ARE RESPONSIBLE FOR THE UNLAWFUL DISCRIMINATION .......7

        A.      J&J's Control Over Its MedTech Entities Is a Matter of Public Record ..............10

III.    DEFENDANTS' CASE LAW IN SUPPORT .................................................13

IV.     MOTION TO STRIKE ALLEGATIONS IN THE COMPLAINT .................18

CONCLUSION...........................................................................................................20

## TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Anderson v. Finley Catering Co.*,
   218 F. Supp. 3d 417 (E.D. Pa. 2016) ........................................................................16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................4

*Brown v. Daikin Am. Inc.*,
   756 F.3d 219 (2d Cir. 2014) ...................................................................................16

*Contee v. Univ. of Pennsylvania*,
   No. 21-1398, 2021 WL 2661459 (E.D. Pa. June 29, 2021)....................................16

*Doe v. Princeton Univ.*,
   30 F.4th 335 (3d Cir. 2022) ....................................................................................10

*Eisai Co., Ltd. v. Teva Pharm. USA, Inc.*,
   629 F. Supp. 2d 416 (D.N.J. 2009) ........................................................................18

*Estate of Cotton v. Senior Planning Services, LLC*,
   2020 WL 7022740 (D.N.J. Nov. 30, 2020)...........................................................18

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009) ...............................................................................4, 5

*Garlanger v. Verbeke*,
   223 F. Supp. 2d 596 (D.N.J. 2002) ........................................................................18

*Goosby v. Johnson & Johnson Medical, Inc.*,
   228 F.3d 313 (3d Cir. 2000) ...................................................................................19

*Graves v. Lowery*,
   117 F.3d 723 (3d Cir. 1997) ...................................................................................16

*Gunther v. Shelter Grp.*,
   No. 13–04739 (RMB), 2014 WL 3869940 (D.N.J. Aug. 7, 2014).........................15

*Gutierrez v. Johnson & Johnson, Inc.*,
   No. 01–5302 (WHW), 2002 WL 34717245 (D.N.J. Aug. 13, 2002) .....................19

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) ............................................................10

*Japhet v. Francis E. Parker Memorial Home, Inc.*,
No. 14-01206 (SRC), 2014 WL 3809173 (D.N.J. July 31, 2014)............13

*Johnson v. Flowers Industries, Inc.*,
814 F.2d 978 (4th Cir. 1987) ............................................................14

*Martin v. Safeguard Scientifics, Inc.*,
17 F. Supp. 2d 357 (E.D. Pa. 1998) ....................................................15

*Martinez v. UPMC Susquehanna*,
986 F.3d 261 (3d Cir. 2021) .........................................................5, 17

*Marzano v. Computer Science Corp., Inc.*,
91 F.3d 497 (3d Cir. 1996) ...............................................................14

*Nat'l Labor Relations Bd. v. Browning-Ferris Indus. of Pa., Inc.*,
691 F.2d 1117 (3d Cir. 1982)............................................................16

*Nesbit v. Gears Unltd., Inc.*,
347 F.3d 72 (3d Cir. 2003) ...............................................................16

*Plaso v. IJKG, LLC*,
553 F. App'x 199 (3d Cir. 2014) .......................................................16

*Red Hawk Fire & Security, LLC v. Siemens Industry Inc.*,
449 F. Supp. 3d 449 (D.N.J. March 30, 2020) ....................................18

*Richards v. Johnson & Johnson, Inc.*,
No. 05–3663 (KSH), 2009 WL 1562952 (D.N.J. June 2, 2009)............20

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506 (2002) ........................................................................4

*Whelan v. Teledyne Metalworkers Prod.*,
No. 01-1316, 2005 WL 2240078 (W.D. Pa. Sept. 14, 2005) ................15

## **Statutes**

29 U.S.C. § 2601 ............................................................................2, 6

42 U.S.C. § 2000 ..............................................................................6

N.J.A.C. § 13:14 ............................................................................2, 6

N.J.S.A. § 10:5-1.................................................................................................................2, 6

**<u>Rules</u>**

Fed. R. Civ. P. 8 .................................................................................................................3, 4

Fed. R. Civ. P. 12.......................................................................................................1, 3, 4, 18

Plaintiff Jing Kong respectfully submits this memorandum of law in opposition to Defendants Johnson & Johnson's ("J&J") and Ethicon, Inc.'s ("Ethicon") (collectively, "Defendants") motion to dismiss the Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12 (b)(6)"). Defendants further seek to strike certain allegations about J&J. Based on well-settled Third Circuit precedent, Defendants' request to dismiss all claims against J&J and Ethicon fails in its entirety. Similarly, for reasons discussed below, no legal justification exists to strike allegations in the Complaint.

## PRELIMINARY STATEMENT

Plaintiff Jing Kong alleges that after working exceptionally for more than six years, and receiving only positive feedback, she was unlawfully selected to be terminated on March 1, 2023 as part of a J&J reduction in force ("RIF"). Ms. Kong alleges she was selected because she had disclosed her pregnancy shortly before the RIF. Numerous allegations in the Complaint[1] create an inference of discrimination at this pleading stage and include *inter alia*, (1) that when Ms. Kong told her boss Scott Ciarrocca that she was pregnant, his immediate reaction was one of shock and concern, responding that her pregnancy was now "one more responsibility" on top of an "already exhaustive list of responsibilities" she had; (2) when Ms. Kong told her other supervisor, Yijun Lu, her immediate reaction also was shock, and she responded by asking Ms. Kong if she would be able to "handle" all of her responsibilities at work and at home with two small kids; (3) out of the 17-person team, Ms. Kong was the only pregnant person and the only one selected to be fired; (4) Ms. Kong was the only team member entitled to upcoming paid leave of 19 weeks; (5) Ms. Kong had worked at J&J since 2016 and at least two men on the team were hired less than a year before

---

[1]     All references herein to the "Complaint" refer to the Amended Complaint filed on October 12, 2023, ECF No. 23. All references to Defendants' motion to dismiss refer to ECF No. 24.

the RIF, and two other men had worked there less than two years yet were not selected; (6) the story about how Ms. Kong was selected for termination shifted at least three times—a fact pattern suggestive of pretext (i) first Ms. Kong was told the decision was not based on her performance, (ii) then, she was told it was a "management decision" without elaboration, and (iii) finally, she was told she was selected based on ranking calculations over a three-year period which suggests an even greater inference of pretext because at least forty percent of the team had been there less than three years.

These allegations more than plausibly suggest the inference that Ms. Kong was the sacrificial employee for the RIF because she was pregnant and would be out on paid leave for 19 weeks, while the rest of the team would cover her work responsibilities.  Ms. Kong is entitled to discovery to satisfy her burden of proof under the relevant anti-discrimination statutes.[2]  In their attempt to dismiss all seven of her causes of action, Defendants rely on summary judgment decisions and misleadingly reference this heightened standard to say that Ms. Kong failed to "establish" her claims.  Defendants describe her allegations as "formulaic recitations of certain elements" and feign confusion about what she is alleging they did wrong.  Tellingly, Defendants never once argue that Ms. Kong failed to allege facts that, if true, infer discriminatory conduct by Defendants.  Instead, the basis for dismissal rests entirely on their claim that she failed to sufficiently plead under notice pleading standards that both J&J and Ethicon acted as her employer.

---

[2]     The Complaint asserts the following causes of action: First Cause of Action (pursuant to the FMLA, 29 U.S.C. § 2601, *et seq*., for interference and retaliation);  Second Cause of Action ( pursuant to the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-1 *et seq.*, for discrimination); Third Cause of Action (under NJLAD, for retaliation); Fourth Cause of Action (under the New Jersey Family Leave Act, "NJFLA", N.J.A.C. § 13:14, *et seq.* for discrimination); Fifth Cause of Action (under NJFLA, for retaliation); Sixth and Seventh Causes of Action (under Title VII, for discrimination and retaliation).

But this is simply another way to pretend that Defendants are not on notice about what they did wrong such that they can properly respond.

The frivolous nature of Defendants' position is evidenced by their repeated claim that J&J was "not her employer." Defendants cannot explain how the Complaint fails in this respect because throughout the Complaint she specifically pleads allegations that they are employers and if true, shows that each Defendant qualifies as an employer for purposes of violating the anti-discrimination laws. Without authority, Defendants assert that Ms. Kong's identification of both J&J and Ethicon as her employer requires dismissal under Rule 12(b)(6) because Defendants dispute this fact. Ms. Kong is not required to include allegations that establish the precise nature of the relationship between J&J and Ethicon. Such an argument improperly places too high of a burden on the Complaint and Defendants' suggested analysis is wrong. The question is whether, pursuant to Fed. R. Civ. P. 8(a)(2) ("Rule 8") and Rule 12(b)(6), the Complaint's factual allegations are sufficient to allow the case to proceed to discovery on the issue of whether employer status applies to J&J and Ethicon, as that term is defined in the FMLA, Title VII and parallel state laws. Unquestionably, based on well-settled Third Circuit precedent, the answer is yes. Denying Ms. Kong the opportunity to obtain evidence in discovery would require this Court to rule that as a matter of law, Ms. Kong could not persuade a trier of fact that both J&J and Ethicon are accountable for their participation in discriminatory conduct.

## FACTUAL ALLEGATIONS

Ms. Kong alleges that she worked at J&J for more than six years, and steadily increased her responsibilities and tenure. ECF 23, ¶¶ 6-7, 27-31. She alleged that she reported directly to senior scientists at Ethicon, who valued her contributions and understood that her work was exemplary, including during Covid-19 when she was one of the scientists who personally came

3

into the lab during the week. *Id.*, ¶¶ 32-35, 43-44, 70-71.  During her employment, she received nothing but positive feedback about her performance, and one manager admitted to her that even though he participated in assigning rankings to her annual reviews, he did not understand "the rating criteria they had to use, which often changed year to year," and further "even though the rating system was confusing and unclear, they 'had' to make sure the misunderstood rating criteria resulted in a curve." *Id.*, ¶ 74.  The Complaint alleges that unlawful bias factored into her annual performance review rankings. *Id.*, ¶¶ 70-78.  In October 2022, shortly before she announced her pregnancy and then was fired, she was selected to join a prestigious and highly competitive internal program. *Id.*, ¶¶ 37-39.  She also was selected for termination despite a history of receiving numerous performance-based awards, including from the former J&J Chairman and CEO, Alex Gorsky. *Id.*, ¶¶ 43, 78.  She was terminated on March 1, 2023. *Id.*, ¶ 54.

## MOTION TO DISMISS STANDARD

On a Rule 12(b)(6) motion to dismiss, the court is required to accept all factual allegations in the Complaint as true and draw all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To withstand the motion, the Complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

The Supreme Court and the Third Circuit have held "that an employment discrimination plaintiff need not plead a *prima facie* case of discrimination ... to survive [a] motion to dismiss." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 515 (2002); *accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009).  Instead, under Rule 8, the complaint must only contain "a short and

plain statement of the claim showing that the pleader is entitled to relief," and "need only allege enough facts to 'raise a reasonable expectation that discovery will reveal evidence of [each] necessary element.'" *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (quoting *Fowler*, 578 F.3d at 213). In *Martinez v. UPMC Susquehanna*, the Third Circuit discussed what is enough notice in an employment discrimination complaint:

> The complaint does enough to put the hospital on notice. It alleges who fired Martinez, when, and how. It names his replacements and alleges that they were "significantly younger." Though Martinez is unlikely to know his replacements' exact ages and specialties until discovery, the hospital can look up this information in its records. *It now knows enough to respond*.

*Id.* at 267 (citing *Fowler*, 578 F.3d at 213) (emphasis added). In *Fowler*, the Third Circuit explained that "standards of pleading are not the same as standards of proof." 578 F.3d at 213. There, the Third Circuit reversed the district court's dismissal holding:

> The District Court should have focused on the appropriate threshold question, namely whether Fowler *pleaded* she is an individual with a disability. The [Court] instead focused on what Fowler can "prove," apparently maintaining that since she cannot prove she is disabled she cannot sustain a *prima facie* failure-to-transfer claim. A determination whether a *prima facie* case has been made, however, is an evidentiary inquiry, it defines the quantum of proof plaintiff must present to create a rebuttable presumption of discrimination. Even post-*Twombly*, it has been noted that a plaintiff is not required to establish the elements of a *prima facie* case but instead, need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element. Under the Federal Rules of Civil Procedure, an evidentiary standard is not a proper measure of whether a complaint fails to state a claim.

*Id.* (citations and quotations omitted). Defendants attempt to force Ms. Kong to an evidentiary standard at the pleading stage as to which entity did what, when and to whom. In connection with her pregnancy discrimination claims, Ms. Kong more than sufficiently alleged that the unlawful conduct occurred in connection with her role as an employee, and J&J and Ethicon's role as employers. The Complaint alleges that J&J is the actor responsible for the ranking system used in the annual reviews and that J&J is the actor responsible for implementing the RIF. At this stage

5

she is not required to allege the precise nature of the entity relationship, it is enough that she has implicated conduct by each entity relevant to her claims. Defendants may disagree with her allegations, but the Complaint alleges far more facts than necessary to place Defendants on notice of her claims. To grant Defendants' motion to dismiss would require the Court to accept J&J's allegation of fact, that it is not an employer, while discrediting the Complaint in its entirety. Of course, Defendants, not Ms. Kong, possess the relevant information in this case concerning the details about such things as the ranking system used in annual reviews, hiring and firing of employees, the financial situation that forced an employee from the 17-member team to be fired, and significantly, who made the final decision to include Ms. Kong in the RIF. Denying Ms. Kong the opportunity to obtain evidence in discovery would require this Court to rule that as a matter of law, Ms. Kong could not persuade a trier of fact that both J&J and Ethicon are accountable.

## **ARGUMENT**

## I. **MS. KONG ADEQUATELY ALLEGED THAT J&J AND ETHICON ARE EMPLOYERS**

Defendants justify dismissal of Ms. Kong's claims based on their self-serving proclamation that neither Defendant is her "employer." ECF 24 at 15.[3] With respect to J&J, Defendants write, "because J&J never employed Plaintiff, Plaintiff is foreclosed from pursuing any claims against J&J and such claims must be summarily dismissed." *Id.* This is a dispute of fact. At the initial pleading stage the allegations in the complaint are considered true. Defendants' substantive argument to dismiss claims against Ethicon is below:

> Other than alleging that Plaintiff is a former Senior Scientist at Ethicon and that Ethicon is a subsidiary of J&J… Plaintiff does not direct any substantive allegations

---

[3]     Title VII, 42 U.S.C. § 2000e(b) defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees," as well as "any agent of such a person." The FMLA, 29 U.S.C. § 2601, *et seq.*, at § 2611 (4)(A) defines "employer" as including  "(i) any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the

against Ethicon. Instead, in pleading her causes of action, Plaintiff utilizes the term "Defendants," relies on formulaic recitations of certain elements, and includes Ethicon in name only.

ECF 24 at 15-16 (citations omitted).  Based on the allegations, such a position is confounding.  To suggest that Ms. Kong is required to delineate between the Defendants as to each substantive allegation throughout the 21-page Complaint is baseless.  Defendants understand exactly what the relationship is between J&J and Ethicon and know that a copious amount of information regarding the two entities exists in the public sphere such that pretending J&J is not involved directly in the business operations of its subsidiaries, including Ethicon, is useless.  Indeed, as set forth below this is why Ms. Kong alleges that J&J is an employer for purposes of her claims.

## II.   ALLEGATIONS OVERWHELMINGLY PLACE DEFENDANTS ON NOTICE THAT THEY ARE RESPONSIBLE FOR THE UNLAWFUL DISCRIMINATION

To avoid repeating the Complaint herein, several examples illustrate the futility of Defendants' argument that allegations fail to place J&J on sufficient notice that it can be held liable in this action:

- ¶¶ 1-3 allegations contain language from J&J's website in which it clearly and unequivocally represents itself as "the employer" of the "Johnson & Johnson employees" who work and makeup the "largest and most broadly based health company" in the world;

- ¶ 6 allegations that J&J fired Ms. Kong;

- ¶¶ 8-9 allegations about how J&J's representations made specifically to female employees that they are supported and valued gave Ms. Kong a false sense of security that telling her

---

current or preceding calendar year; and (ii) includes (I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and (II) any successor in interest of an employer."  The New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1 *et seq.* defines at 10:5-5(a) "Person" to include "one or more individuals, partnerships, associations, organizations, labor organizations, corporations, legal representatives, …" and at 10:5-5(e) "'Employer' includes all persons as defined in subsection (a) of this section." Pursuant to the New Jersey Family Leave Act, N.J.A.C. § 13:14,  "Employer" means an employer as defined in the Act, which employs 30 or more employees, whether employed in New Jersey or not, for each working day during each of 20 or more calendar workweeks in the then-current or immediately preceding calendar year.

supervisors about her pregnancy status six months in advance would not jeopardize her career;

- ¶¶ 21, 27 allegations that Ms. Kong's 2016 hiring by J&J was to work on "J&J's Analytical Characterization team;"

- ¶¶ 36, 39 allegations that because her performance was exemplary, in October 2022 she was selected to participate in a J&J internal program called "Bridges" and to be eligible, she had to have worked for J&J a minimum of three years;

- ¶ 43 allegations that Ms. Kong received work performance awards from both Ethicon supervisors and J&J executives; and

- ¶ 59 allegations that J&J began messaging in February 2023 that it would be laying off employees in some divisions as part of a purported reduction of force.

Clearly, from the beginning of the Complaint, Ms. Kong alleges that J&J acted in an employer capacity. The allegations at ¶¶ 1-3 contain language from J&J's website holding itself out as such.[4] The Complaint cites to the webpage, https://www.jnj.com/caring-and-giving/ways-johnson-johnson-has-supported-women, and quotes directly from it, including where J&J says that its "workforce is nearly 50% female." *Id.* J&J claims that it is not an employer because it is a "holding company," as if its corporate regulatory status translates into a provable "fact" about the level of control it asserts over Ethicon. This is false.

In this action, because Ms. Kong performed work as part of Ethicon, J&J says it has "no employees," but when it needs to attract talented female scientists to its "work family of companies" J&J conveniently claims on its public website that "in 2021, 54% of *new hires were women*," and "at Johnson & Johnson, around the world, 48% of management positions are held by women." *Id.* Ms. Kong expressly set forth such content about J&J in the Complaint and cited to

---

[4]     J&J hopes to strike allegations at ¶¶ 1-5, 75 because it says such allegations are scandalous as defined under Rule 12(f). Not only is such content far removed from prejudice, but such content makes clear that J&J is an employer and represents to the public that it is an employer.

the publicly available site to show that J&J holds itself out as an entity that conducts itself in an employer capacity.[5]  If it did not, why would J&J go to such lengths to repeatedly make these representations publicly, to potential employees, existing employees and to investors?  J&J cannot have it both ways.  If the U.S. subsidiaries truly operated as separate businesses, far outside of control, oversight and regulation by J&J, such subsidiaries, including Ethicon, would make representations about the number of female scientists it employs, the myriad of ways in which Ethicon values and supports female employees generally, and tout statistics about its historical workforce to the public, including on its own website.  Of course, the subsidiaries do no such thing because J&J exerts tremendous oversight over its divisions—this is why investors purchase stock in J&J—not Ethicon.  It is precisely from such a capacity that J&J is alleged to have implemented the RIF in which Ms. Kong was ultimately terminated.  Only J&J and Ethicon know the details about who was involved in the final decision regarding her selection and what criteria was used.  This information is what Ms. Kong is entitled to receive in discovery.

In addition, this same link and website quoted in the Complaint includes numerous other representations that J&J holds itself out as an employer, including by touting internal programs created and run by J&J that it says improve opportunities for its female employees, such as its "Re-Ignite" program.  In fact, the Complaint contains allegations about the internal J&J run program called "Bridges," in which Ms. Kong participated.  ECF 23, ¶¶ 36, 39.  Although it is not a program exclusively for female employees it is a "highly competitive" internal program that Ms. Kong was

---

[5]      The Complaint need not cite to each individual page on J&J's site to incorporate the multitude of representations made by J&J to the public.  Indeed, at the top of the page for which a specific link was referenced in the Complaint, (ECF 23, at 1, n.1) numerous dropdown boxes are set forth at the top, including to "latest news," "our company," "careers" and "investors."  Notably, Defendants' motion to dismiss cites to J&J's Form 10-k, although omits the actual link.  ECF 24, at 4, n.2.

selected to participate in—and a program that would help create even more opportunities for Ms. Kong's advancement. *Id.* To suggest her Complaint requires dismissal because Ms. Kong did not, nor could she, include sub-details about the genesis of the Bridges program, for example, or detail the names of executives at J&J controlled entities who are responsible for what aspects of the program, is meritless.[6]

A.   **J&J's Control Over Its MedTech Entities Is a Matter of Public Record[7]**

That Ethicon operates under J&J's full control as one of J&J's "MedTech" companies is a matter of public record. Indeed, an attempt to locate Ethicon online (as if it were an independent, entity not controlled directly by J&J which it is not) would be fruitless. This is because Ethicon, is found under the J&J website.[8] A member of the public ("User") finds this online information about Ethicon through the link cited to in the Complaint, (ECF 23, at 1, n.1), by simply clicking on "our company" at the top and navigating to Johnson & Johnson MedTech.[9] As set forth in all of J&J's publicly disseminated information, including in documents filed with the SEC, Ethicon is J&J MedTech. Clicking on the link leads a User to Ethicon's page which clearly states at the top,

---

[6]    Because it is an internal program, information about the specific details is not available to the public. And while some people involved in managing the program at senior levels include such experience on publicly available outlets, such as on LinkedIn, to expect Ms. Kong to sift through hundreds of LinkedIn profiles to locate people who reference their oversight of the program simply to "prove" that it is cross-functional, across J&J's family of wholly owned subsidiaries, is not something required to defeat a Rule 12(b)(6) motion.

[7]    The Court is permitted to consider documents integral to or explicitly relied upon in the complaint, as well as matters of public record and do so without converting the motion to dismiss into one for summary judgment under Rule 56. *See, e.g., Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). In the event the Court considers content from other parts of J&J's site not quoted directly in the Complaint to be "outside of the pleadings," rather than converting the motion to one for summary judgment, Plaintiff respectfully seeks leave to amend the Complaint.

[8]    https://www.jnjmedtech.com/en-US/companies/ethicon.

[9]    *See* either Our Company, https://www.jnj.com/discover-j-j, which takes the User to J&J MedTech, https://www.jnj.com/medtech#surgery or https://www.jnjmedtech.com/en-US/companies/ethicon.

"<u>Johnson & Johnson MedTech</u>."  Ethicon's name comes *below* J&J.  Everything on the site makes clear that it operates under, and as part of J&J.  For example, on this home page when a User scrolls down, there is a header regarding the Johnson & Johnson Institute with a link to find out more, as well as a header labeled "Careers," with a link to find out more.  Although this is the Career link on the Ethicon page (which is Johnson & Johnson Med Tech), when a User clicks on the "view our job openings" link, the User immediately is taken to the "Careers at JNJ" page,[10] that clearly says "JNJ work with us."

To be clear, the only job search that one can engage in regarding Ethicon is a search on the <u>J&J job portal</u>.  This is because J&J handles the hiring for Ethicon, as it did for Ms. Kong, which is why her representation in the Complaint that she was hired and fired by J&J, and by Ethicon, is accurate for purposes of an initial pleading.  In addition, when a User clicks the dropdown box "About Us" on the Ethicon page and clicks "Careers," a User also is immediately taken to the following: "Careers: Working at J&J can change everything, including YOU. Join us.  The page reads in part, "Learn about Our Credo, Leadership team, Policies and Statements, Code of Business Conduct and Company Structure."  This is in reference to J&J because of course Ethicon itself does not have its own separate Credo or links relating to its own leadership, policies or code of business conduct because it is encompassed by and one in the same with J&J.  Even if a User wanted to order an Ethicon product, he or she is taken to "J&J Customer Connect" where a User must login to the <u>J&J portal</u>.[11]  No mistake can be made about the intertwined relationship as between J&J and its MedTech companies including Ethicon, which J&J acquired in 1949.

---

[10]     https://www.careers.jnj.com/work-with-us.
[11]     https://us.jjcustomerconnect.com/store/en/login/.

Further, the intertwined relationship is obvious when the very webpage cited to in the Complaint at ¶¶ 1-3 describes how J&J "supports its workforce both in the office and outside of it," by using the work experience of none other than an <u>Ethicon R&D scientist</u>, the same role Ms. Kong occupied:

> Johnson & Johnson prides itself on caring for the world, one person at a time—and that philosophy translates into enabling employees to give back outside of the office…. Reinhard Juraschek, Ph.D., **Associate Director of Research & Development, Ethicon, a Johnson & Johnson MedTech Company** uses this benefit to help travel to Guatemala each year as a volunteer with Rotary International's Iowa MOST (Miles of Smiles Team), which performs cleft lip and palate surgeries on children.

(emphasis added).

Similarly, as to Ethicon, Defendants' contention that the Complaint fails to allege conduct that if true would subject it to liability under the anti-discrimination laws is without merit. For example, the Complaint references conduct engaged in by Scott Ciarrocca and Yujin Lu suggesting each considered Ms. Kong's status as pregnant to be concerning and shocking, each messaging negative reactions to the news. ECF 23, ¶¶ 45-53. Additional examples of Ethicon supervisor conduct are included in allegations about the shifting explanations for her termination which is in itself suggestive of pretext. *Id.* ¶¶ 56, 58, 69, 74. There can be no doubt that the Complaint includes allegations about Ethicon's conduct, but of course, if J&J wishes to admit in its answer or in discovery that Ethicon managers did not play any role in the ultimate decision to terminate Ms. Kong, Defendants are free to do so.

In sum, until the parties engage in discovery, it would not be possible for Ms. Kong to assert allegations delineating as between Ethicon and J&J as to who did what and when regarding her discriminatory firing. For example, regarding the RIF Ms. Kong could not properly allege that it was an Ethicon only RIF (as opposed to a J&J MedTech). Ms. Kong was not provided such high

level information and even if she had asked, she would not have been told. Defendants attempt to force Ms. Kong into suggesting she could draft a complaint with detailed allegations about J&J's control over Ethicon's ranking methodology, and about who ultimately decided she would be the employee fired, but only Defendants are in possession of this confidential information. At the pleading stage, she is not required to assert liability exclusively based on a single employer doctrine, under the alternative theory of the joint employer doctrine or to support piercing the corporate veil under an alter ego argument. What matters is that the Complaint more than adequately alleges that J&J, despite its entity status as the "parent," participated in and was involved in employment decisions that impacted her.

## III.   **DEFENDANTS' CASE LAW IN SUPPORT**

The cases that Defendants cite in support of their motion to dismiss are all distinguishable. Defendants write that Ms. Kong "fails to delineate her allegations against each entity in her pleading. The breadth of Plaintiff's factual allegations are directed toward J&J—an entity that never employed Plaintiff. There are virtually no substantive allegations against Plaintiff's actual employer, Ethicon." ECF 24 at 11. In support of their disingenuous claim that they have no notice of what is being alleged against them, Defendants rely on *Japhet v. Francis E. Parker Memorial Home, Inc.*, No. 14-01206 (SRC), 2014 WL 3809173, at *1 (D.N.J. July 31, 2014). In *Japhet*, the plaintiff asserted FMLA claims alleging she was fired for seeking workers' compensation benefits. She named as defendants her employer and an individual defendant, "Kellerman." The court in *Japhet* explained that the complaint failed to allege "who Kellerman is" and contained no allegations about why Kellerman was named as an individual defendant. In fact, it was not until briefing on the motion to dismiss that the court learned, "for the first time that Kellerman is the Human Resource manager who actually did the firing." *Id*. The only reference to Kellerman in

the entire complaint was that Kellerman occupies a "supervisory and/or management position[ ]." *Id.* Against this backdrop the court in *Japhet* reasoned, "[a]lleging that 'Defendants' undertook certain illegal acts, without more, injects an inherently speculative nature into the pleadings, forcing both the Defendants and the Court to guess who did what to whom when." *Id.* at 2. Such facts bear no similarities to the well-pleaded Complaint by Ms. Kong. No individual defendants are named herein. As such the *Japhet* decision dismissing an individual defendant for pleading deficiencies under the FMLA which requires allegations that the individual "exercises supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation while acting in the employer's interest," is not controlling authority here.

Defendants cite several cases for the generalized proposition that there is a presumption that "subsidiaries, not the parent" are "employers in the context of employment discrimination." ECF 24 at 13. Specifically, Defendants rely on *Marzano v. Computer Science Corp., Inc.*, 91 F.3d 497, 513 (3d Cir. 1996), a decision on a motion for summary judgment. There, a former employee sued under relevant discrimination and leave acts for unlawful conduct surrounding her termination while on maternity leave. The defendants, a parent ("CSC") and a subsidiary ("CSC-Partners"), objected to plaintiff's allegations that both entities qualified as her employer. The point used by Defendants here involves *dicta* about general corporate principles as between parent and subsidiary entities, "when a subsidiary hires employees, there is a strong presumption that the subsidiary, not the parent company, is the employer." *Marzano*, 91 F.3d at 513. Defendants omit the remainder of the quote in the decision, "the presumption could be overcome if the parent-company 'exercises excessive control in one of two ways.'" *Id.* The Third Circuit in *Marzano* after a lengthy block quote from a Fourth Circuit opinion, *Johnson v. Flowers Industries, Inc.*, 814 F.2d 978, 980-81 (4th Cir. 1987), wrote, "the [Flowers] court concluded that 'courts have found

14

parent corporations to be employers only in extraordinary circumstances.'" *Id.* The Third Circuit held, based on the evidence produced in discovery, that only one entity was the employer because the evidence showed that "[plaintiff's] only direct involvement with CSC at the time of her layoff was her participation in CSC's pension plan." *Id.* at 514. This decision following a Rule 56 motion and based on record evidence is not controlling here and J&J and Ethicon's reliance on the above-cited quotes is misplaced.

The remaining decisions cited by Defendants similarly bear no resemblance to the facts in this case and therefore do not support dismissal. For example, Defendants incorrectly rely on the decision in *Martin v. Safeguard Scientifics, Inc.*, 17 F. Supp. 2d 357 (E.D. Pa. 1998). *Martin* involved an action against an employer and its majority shareholder, alleging discrimination and breach of contract. On a motion for partial summary judgment, the court held that the employer and majority shareholder were not a "single employer" for purposes of Title VII. Based on the record evidence, the court held that there was no genuine issue of material fact. *Id.* at 367. The court's decision in *Martin,* based on a fact-specific analysis on a Rule 56 motion is not controlling here where no discovery has taken place.

Defendants' reliance on *Whelan v. Teledyne Metalworkers Prod.*, No. 01-1316, 2005 WL 2240078, at *13 (W.D. Pa. Sept. 14, 2005) also is misplaced. That decision involved a motion for reconsideration of the court's prior decision in which both parties' motions for summary judgment were denied. Again, this is not controlling on a motion to dismiss under Rule 12(b)(6). The case *Gunther v. Shelter Grp.*, No. 13-04739 (RMB), 2014 WL 3869940, at *9 (D.N.J. Aug. 7, 2014) is the sole motion to dismiss decision cited by Defendants. *Gunther* involved alleged harassment perpetrated by an inpatient resident at a senior living facility where plaintiff worked. Thus, at issue was employer liability for conduct engaged in by a <u>non-employee</u>. The core facts are dramatically

different than here, where Ms. Kong alleges that she was unfairly selected for an RIF because of her pregnancy status. Although the court in *Gunther* dismissed claims against the senior living facilities' parent company, it did so without prejudice. *Id.* at 9.

The above cases are not persuasive here. Other than *Gunther*, Defendants fail to cite any decisions that depart from well-settled Third Circuit precedent that the question of employer status is one of fact, and "[t]he precise contours of an employment relationship can only be established by a careful factual inquiry." *Graves v. Lowery*, 117 F.3d 723, 729 (3d Cir. 1997). *See also Anderson v. Finley Catering Co.*, 218 F. Supp. 3d 417, 423 (E.D. Pa. 2016) ("discovery is often necessary before a plaintiff can reliably define the contours of the employment relationship.*"); Contee v. Univ. of Pennsylvania*, No. 21-1398, 2021 WL 2661459, at *4 (E.D. Pa. June 29, 2021) ("whether a plaintiff is an employee can rarely be resolved on a motion to dismiss."); *accord Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014) ("Whether two related entities are sufficiently integrated to be treated as a single employer is generally a question of fact not suitable to resolution on a motion to dismiss.").

The Third Circuit has stated that the integrated enterprise theory "rests on the degree of operational entanglement—whether operations of the companies are so united that nominal employees of one company are treated interchangeably with those of another." *Plaso v. IJKG, LLC*, 553 F. App'x 199, 206 (3d Cir. 2014) (quoting *Nesbit v. Gears Unltd., Inc.*, 347 F.3d 72, 87 (3d Cir. 2003)). Factors central to the inquiry include: "(1) the unity of ownership, management, and business functions; (2) whether the entities present themselves as a single entity to third parties; (3) whether the parent company indemnifies the expenses or losses of its subsidiary; and (4) whether one entity does business exclusively with the other." *Id.* (citing *Nesbit*, 347 F.3d at

16

87); *see also Nat'l Labor Relations Bd. v. Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1122 (3d Cir. 1982) (outlining factors under the single employer doctrine).

Contrary to Defendants' position, Ms. Kong is not required to "establish" in her initial Complaint, the specific role each named entity played.  Ms. Kong is not required to, nor should she, insert allegations forcing her to categorize the relationship between J&J and Ethicon as one of a single employer, joint employer, or detail specific evidence about how their operations are interrelated.  Defendants prematurely urge the Court to utilize a heightened factual test, when discovery has not begun, and this motion is pursuant to Rule 12(b)(6).  At this juncture, far more allegations than necessary are included to place Defendants on notice of the wrongful conduct that occurred.  *See Martinez v. UPMC Susquehanna*, 986 F.3d 261 at 267 (the pleader "need only allege enough facts to 'raise a reasonable expectation that discovery will reveal evidence of [each] necessary element,'" the question is whether defendant "*now knows enough to respond.*").  Here, at a minimum, Defendants unequivocally are on notice that Ms. Kong alleges J&J actively participated in providing ranking criteria that her Ethicon managers used, despite admitting their inability to understand it, and the annual review rankings were one reason she was provided as justification for her termination.

Interestingly, Defendants fail to include in their motion the case, *Kumar v. Johnson & Johnson, Inc.*, No. 12-779 (MAS) (DEA), 2014 WL 55125492014 (D. N.J., Oct.  31, 2014) (Hon. Michael A. Shipp).  *Kumar* involved a female employee's claims of discrimination against her employers, J&J, Ethicon and J&J Consumer Companies, Inc.  ("J&J Consumer").  Defendants filed a motion for summary judgment and the plaintiff's Rule 56.1 statement included, "Ethicon is a member of the Johnson & Johnson Family of Companies."  *Kumar*, 2014 WL 55125492014, *1.  Using J&J's intranet system, plaintiff transferred from Ethicon to J&J Consumer and her Rule 56.1

17

statement also included, "like Ethicon, J&J Consumer is a member of the Johnson & Johnson Family of Companies." *Id.* at 3.  As part of Defendants' argument, they claimed that J&J was never plaintiff's "employer." *Id.* at 6.  Rejecting this argument, the Court reasoned as follows:

> As a preliminary matter, Defendants argue that all claims against Johnson & Johnson must be dismissed as Plaintiff was never employed by Johnson & Johnson. Defendants' argument is unavailing, however, as Defendants only cited to case law holding that "independent contractors" are not considered "employees" under Title VII and the NJLAD.  Defendants make no other legal arguments regarding Johnson & Johnson's status as an employer of Plaintiff, and Defendants do not assert that Plaintiff was an independent contractor.  Instead, Defendants state only that "Ethicon and [J & J Consumer] are distinct legal entities." The moving party has the burden initially of identifying that evidence that demonstrates the absence of a genuine issue of material fact. As such, Defendants have not met their burden.

*Kumar,* 2014 WL 55125492014, *6 (citations omitted).   Clearly, in at least one prior case J&J had the opportunity during discovery and as part of a motion for summary judgment to present evidence that it and Ethicon were separate entities for purposes of federal and state anti-discrimination laws, yet it failed to do so.[12]  See also cases cited *infra* at Part IV, at 18-19.

## IV.  **MOTION TO STRIKE ALLEGATIONS IN THE COMPLAINT**

Courts in the Third Circuit uniformly agree that motions to strike are disfavored and infrequently granted.  *See Estate of Cotton v. Senior Planning Services, LLC*, 2020 WL 7022740, at *20 (D.N.J. Nov. 30, 2020) (motions to strike under Rule 12(f) are disfavored and should generally be denied "'unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or ... confuse the issues.'") (quoting *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 609 (D.N.J. 2002)); *Eisai Co., Ltd. v. Teva Pharm. USA, Inc.*, 629 F. Supp.

---

[12]      In an abundance of caution, should the Court determine that the Complaint requires specific language, for example, "J&J exercised financial control over Ethicon, J&J's business operations are interrelated to Ethicon's, J&J exercised a common management with Ethicon over hiring and firing," Plaintiff requests leave to amend.  Respectfully, Plaintiff believes that such assertions are inherent in the Complaint as pleaded, and such language is nothing more than formulaic recitations.

2d 416, 424 (D.N.J. 2009) ("Rule 12(f) standard essentially translate[s] into application of the standards of a Rule 12(b)(6) motion to dismiss, with the understanding that a motion to strike should be granted sparingly."); *see also Red Hawk Fire & Security, LLC v. Siemens Industry Inc.*, 449 F. Supp. 3d 449 (D.N.J. March 30, 2020) (striking a pleading is a "drastic remedy to be resorted to only when required for the purposes of justice") (quoting *Eisai Co., Ltd. V. Teva Pharm. USA, Inc.*, 629 F. Supp. 2d 416, 424 (D.N.J. 2009)).

Pursuant to Fed. R. Civ. P. 12(f), allegations will only be stricken where they contain "[r]edundant, impertinent, or scandalous matter." Here, there can be no question that paragraphs 1-5, 75 of the Complaint do not contain redundant, immaterial, impertinent, or scandalous information. To the contrary, these allegations directly counter J&J's contention that Ms. Kong failed to allege it is subject to potential liability under the relevant anti-discrimination laws. Defendants fail to explain how content quoted verbatim from J&J's own website could be scandalous or inflammatory, nor do they even attempt to. The content relates to J&J's representations about its workforce and how J&J treats its employees, and specifically how it values female employees. Ms. Kong alleges she was discriminated against and treated less than her peers precisely because of her status as pregnant.

Further, simply nothing in ¶¶ 4-5 is included to "paint J&J in a disparaging light," as claimed. Ms. Kong's claims involve pregnancy discrimination. The fact that J&J expressly acknowledges publicly, in part to build up its own reputation, that it understands how female employees value employer benefits and programs tailored to their health and success is relevant, and hardly disparaging. If Ms. Kong is successful as to liability, the fact that J&J intentionally made promises in contravention of the very laws it is mandated to follow regarding pregnant employees will be probative and admissible.

19

Because her supervisors suggested that she was fired due to her annual performance review rankings over a three-year period, an allegation that such ranking criteria came from J&J and that J&J has been previously accused of bias regarding the ranking system is directly relevant to claims herein. *See Goosby v. Johnson & Johnson Medical, Inc.*, 228 F.3d 313, 321 (3d Cir. 2000) (ranking numbers may appear objective but do not insulate J&J, summary judgment denied); *Gutierrez v. Johnson & Johnson, Inc.,* No. 01–5302 (WHW), 2002 WL 34717245 (D.N.J. Aug. 13, 2002) (putative class action of over 1000 persons of African or Hispanic descent who were employed by defendant J&J, including Ethicon; plaintiffs alleged discriminatory performance evaluations); *Richards v. J&J*, No. 05–3663 (KSH), 2009 WL 1562952 (D.N.J. June 2, 2009) (summary judgment decision regarding alleged race and age discrimination involving J&J's employee annual review system and ratings).

Only after evidence in discovery regarding this allegation can the Court determine whether such evidence would be admissible to a trier of fact. But calling such an allegation impertinent and immaterial because Defendants do not like it is not a sufficient basis to strike. Here, allegations about the ranking system are core assertions and the only prejudice possible would be to Ms. Kong if it were stricken. Just as a defendant's disagreement with a plaintiff's factual allegations or claims is not a basis for dismissal under Rule12(b)(6), such disagreement similarly cannot support a motion to strike. No prejudice exists to Defendants in connection with the complained of allegations.

## **CONCLUSION**

For the reasons set forth herein, Defendants' motion to dismiss Plaintiff's Complaint should be denied in its entirety.

Dated: December 4, 2023
　　　　New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____

Jeanne M. Christensen
Kassandra Vazquez

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
jchristensen@wigdorlaw.com
kvazquez@wigdorlaw.com

*Counsel for Plaintiff*

21