**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JING KONG,<br><br>    Plaintiff,<br><br>  v.<br><br>JOHNSON & JOHNSON AND ETHICON, INC.,<br><br>    Defendants. | Civil Action No. 23-3091 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

  This matter comes before the Court upon Defendants Johnson & Johnson ("J&J") and Ethicon, Inc.'s ("Ethicon") (collectively "Defendants") motion to dismiss and/or strike certain allegations (ECF No. 24) in Plaintiff Jing Kong's ("Plaintiff") Amended Complaint (ECF No. 23). Plaintiff opposed (ECF No. 26), and Defendants replied (ECF No. 30). After careful consideration of the parties' submissions, the Court decides Defendants' motion without oral argument pursuant to Local Civil Rule 78.1. For the reasons outlined below, Defendants' motion is denied in its entirety.

I.  **BACKGROUND**

   A.  **Factual Background**

In 2016, J&J hired Plaintiff to work as a contract scientist[1] on the J&J Analytical Characterization team. (*See* Am. Compl. ¶¶ 21, 27.)[2] In 2018, Plaintiff transitioned to Ethicon, a wholly-owned J&J subsidiary, as a full-time Senior Scientist. (*See id.* ¶¶ 20, 27.)

In her time with Ethicon, Plaintiff won seven awards for excellent performance and was nominated by both Ethicon supervisors and a former J&J executive for those awards. (*See id.* ¶ 43.) Plaintiff was also selected to join J&J's Bridges Program as a patent liaison with the Intellectual Property ("IP") team. (*See id.* ¶¶ 36, 39.) The Bridges Program is a highly competitive program and requires applicants to obtain supervisor approval, complete three years of employment at J&J, and maintain strong annual reviews. (*Id.* ¶ 39.) After beginning with the IP team, Plaintiff was quick to contribute to the team's success, identifying several devices that copied J&J products, which she promptly reported to J&J's in-house patent attorneys. (*Id.* ¶ 41.) For her work with the IP team, Plaintiff won an "Inspire Award" in January 2023, which she was nominated for by an IP-team manager. (*Id.* ¶ 42.)

Just prior to her January 2023 Inspire Award, in December 2022, Plaintiff disclosed to a supervisor, Scott Ciarrocca ("Ciarrocca"),[3] that she was pregnant. (*Id.* ¶ 45.) Ciarrocca "appeared to be shocked and concerned by the news" and expressed concern about Plaintiff's ability to handle

---

[1] Plaintiff was a contractor for Aerotek, Inc. when initially performing work for J&J. (Am. Compl. ¶ 27.)

[2] For purposes of considering the instant motion, the Court accepts all factual allegations in the Amended Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

[3] The allegations suggest that Ciarrocca was employed by J&J where Plaintiff separately alleges that "J&J fired [Plaintiff]" and "Ciarrocca fired [Plaintiff]." (*See* Am. Compl. ¶¶ 6, 54.)

2

her work responsibilities in addition to her pregnancy. (*Id.* ¶¶ 45-46.) In January 2023, Yijun Lu[4] ("Lu"), another of Plaintiff's supervisors, also expressed shock and concern when Plaintiff informed her that that she was pregnant. (*Id.* ¶¶ 47-51.) Lu in particular seemed uniquely concerned with who would help Plaintiff with childcare, routinely inquiring about whether Plaintiff's parents were going to be helping Plaintiff raise her child. (*Id.*) As late as February 2023, Lu was inquiring whether Plaintiff's parents would be moving closer to Plaintiff to help with childcare.[5] (*Id.* ¶¶ 49, 51, 53.)

Then, on March 1, 2023, Plaintiff was fired. (*Id.* ¶ 54.) When Plaintiff inquired as to the reason for her termination, Ciarrocca refused to answer. (*Id.* ¶¶ 55-56.) Instead, he said "I can't tell you why, but we had a lot of factors to consider." (*Id.* ¶ 56.) A week later, several of Plaintiff's coworkers informed Plaintiff that Lu formally announced Plaintiff's termination at work. (*Id.* ¶ 58.) Those coworkers reported that Lu informed them Plaintiff's termination decision was made by "Ciarrocca and management." (*Id.*) At the time of her termination, Plaintiff was entitled to receive up to nineteen weeks of paid maternity leave had she not been terminated. (*Id.* ¶ 60.)

Plaintiff was the only employee terminated on her seventeen-member team, and the only employee on her team that was pregnant.[6] (*Id.* ¶¶ 65-66.) Of the seventeen employees on her team,

---

[4] It is unclear if Lu was employed by Ethicon and/or J&J. (*See generally* Am. Compl.) Lu, however, was allegedly one of Plaintiff's supervisors while she was employed by Ethicon. (*See id.* ¶ 7.)

[5] At one point, Plaintiff alleges that Lu told her to "find a nanny." (Am. Compl. ¶ 73.)

[6] Plaintiff alleges that J&J indicated in February 2023 that it would be laying off employees in some divisions as part of a purported reduction of force. (Am. Compl. ¶¶ 59, 65.) From this allegation Plaintiff implies that she may have been selected as a good candidate to be laid off at Ethicon, pursuant to this J&J directive, because she was pregnant and entitled to maternity leave. (*Id.*)

3

nine were men, four of those men were junior to Plaintiff, and two of those men were employed less than a year when Plaintiff was terminated. (*Id.* ¶ 66.)

As to an official reason why Defendants terminated Plaintiff, she was given several different reasons. First, Defendants informed Plaintiff that she was not terminated based on performance. (*Id.* ¶ 69.) Second, Plaintiff was told that her termination was a "management decision" with no further context provided. (*Id.*) Finally, J&J messaged Plaintiff to inform her that she was terminated based on a 3-year history of ranking[7] in annual reviews. (*Id.*) One of those reviews, her 2020 review, noted that Plaintiff "had a very challenging year due to Covid-19" and that "[t]he lack of child care hindered her ability to be onsite to perform her job." (*Id.* ¶ 70.)

Subsequent to her termination, Plaintiff initiated the instant action on June 5, 2023. (ECF No. 1.) On October 12, 2023, Plaintiff filed the now operative Amended Complaint. (Am. Compl., ECF No. 23.) Plaintiff brings seven claims against Defendants in her Amended Complaint: (1) interference and retaliation under the Family and Medical Leave Act ("FMLA"); (2) discrimination in violation of the New Jersey Law Against Discrimination ("NJLAD"); (3) retaliation in violation of the NJLAD; (4) discrimination in violation of the New Jersey Family Leave Act ("NJFLA"); (5) retaliation in violation of the NJFLA; (6) discrimination in violation of Title VII; and (7) retaliation in violation of Title VII. (Am. Compl. ¶¶ 81-116.) The instant motion is Defendants' challenge to the sufficiency of Plaintiff's allegations in the Amended Complaint. (ECF No. 24.)

---

[7] Plaintiff alleges that J&J maintains a "forced ranking" system that favors men over women because institutionalized bias often ranks men higher than women. (Am. Compl. ¶ 75.) Plaintiff points to the example of her 2020 performance review noting that childcare interfered with her ability to work onsite as supporting the existence of an inherently biased system. (*See id.* ¶ 76.)

B.  **Challenged Pleadings**

In addition to moving to dismiss Plaintiff's claims, Defendants also move to strike several allegations averred in the Amended Complaint. Specifically, Defendants move to strike six paragraphs from the Amended Complaint. (Defs.' Moving Br. 17, ECF No. 24-1.) Those paragraphs are transcribed below:

1. As part of its marketing and promotional efforts to retain highly qualified female employees, J&J boasts on its website about its alleged dedication to supporting female employees in the workplace and "improving the well-being of mothers":

    9 Ways [J&J] Has Supported Women Since 1886

    Learn how the world's largest and most broadly based healthcare company has been empowering female employees, scientists and leaders -- and improving the well-being of mothers around the world, since its founding 137 years ago. Then again, this is hardly surprising for a company whose first 14 employees included eight women -- and whose workforce today is nearly 50% female. Take a look at a few important ways [J&J] has worked to advance and celebrate women both inside and outside the company for over a century.

    **1908**. That's the year [J&J] hired its first female scientist -- no small feat during an era in which fewer than 3% of women attended college.

2. In countless articles, J&J aggressively markets to the public about the ways in which it is an alleged "trailblazer" for female employees, such as by claiming that "[J&J] Is on a Mission to Ignite the Power of Women."

3. J&J urges the public, as well as potential and current employees, to read about its recent signing of the "Employee Well-Being & Mental Health Pledge" from the Society for Human Resource Management, which J&J touts as its "commitment to investing in employee health."

4. It is no secret that maternity leave related benefits are among the most coveted by talented female employees. Because safeguarding employment and income security during pregnancy and after childbirth are critical measures to the achievement of gender

5

> equality at work, it is not surprising that J&J publicly makes the promises it does to attract the best talent.
>
> 5. This makes J&J's breach of such promises even more reprehensible.
>
> . . .
>
> 75. Such a system of "forced ranking" has been attributed to discrimination against female employees, who as compared to their male peers, are systemically undervalued and ranked lower, resulting in less promotions and lower pay rates. It is common knowledge that "forced ranking," also called "rank and yank," has been widely criticized because research has shown how the system inherently institutionalizes bias and devalues groups of employees, such as women. Upon information and belief, J&J knows that its forced ranking system has been accused of systematically undermining the advancement of its female employees, yet it continues to rely upon it, and based on at least one of its "explanations" for her firing, considered Ms. Kong's forced rank 2020 year[-]end review when terminating her.

(Am. Compl. ¶¶ 1-5, 75.) Defendants maintain that each of these allegations is irrelevant and generally alleged only to confuse the issues in this case and to "smear" J&J. (Defs.' Moving Br. 17-18.)

## II.  LEGAL STANDARD

### A.  Rule 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2)[8] "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court

---

[8] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state that the defendant unlawfully harmed the plaintiff. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### B.     Rule 12(f) Motion to Strike

Rule 12(f) motions to strike are disfavored. *See Gray v. BMW of N. Am., LLC*, 22 F. Supp. 3d 373, 386 (D.N.J. 2014); *see also DeSantis v. N.J. Transit*, 103 F. Supp. 3d 583, 596-97 (D.N.J. 2015). Motions to strike, therefore, will not be granted "unless the presence of the surplusage will prejudice the adverse party." *Newborn Bros. Co. v. Albion Eng'g Co.*, 299 F.R.D. 90, 94 (D.N.J. 2014) (citing *F.T.C. v. Hope Now Modifications, LLC*, No. 09-1204, 2011 WL 883202, at *1 (D.N.J. Mar. 10, 2011)). Nonetheless, the Court's determination on a motion to strike is discretionary. *Id.*; *see also Tonka Corp. v. Rose Art Indus.*, 836 F. Supp. 200, 217 (D.N.J. 1993) ("A court possesses considerable discretion in disposing of a motion to strike under Rule 12(f)." (citation omitted)). "Motions to strike are decided on the pleadings alone[.]" *Hanover Ins. Co. v.*

*Ryan*, 619 F. Supp. 2d 127, 132 (E.D. Pa. 2007). Because a motion to strike is not favored, a court will generally not grant such a motion unless the material to be stricken bears "no possible relation to the controversy and may cause prejudice to one of the parties." *See id.* at 133 (citation omitted).

### III. DISCUSSION

Defendants move to: (1) dismiss Plaintiff's Amended Complaint for failure to state a claim under Rule 12(b)(6); and (2) strike certain allegations under Rule 12(f). (*See generally* Defs.' Moving Br.) The Court addresses each in turn.

#### A. Rule 12(b)(6) Motion to Dismiss

Defendants contend the Amended Complaint should be dismissed because: (1) Plaintiff's Amended Complaint relies on improper group pleadings; (2) Plaintiff's allegations against Ethicon are insufficient to meet the Rule 8(a)(2) pleading standard; and (3) Plaintiff's allegations brought specifically against J&J fail to adequately allege J&J is Plaintiff's employer. (*See generally* Defs.' Moving Br.) The Court disagrees with each contention. As such, Defendants' motion to dismiss is denied for the reasons outlined below.

##### i. Improper Group Pleadings

Defendants' first two contentions both seek to persuade the Court that Plaintiff's Amended Complaint relies on improper group pleadings. To be clear, Defendants' first contention maintains that the entirety of Plaintiff's Amended Complaint contains improper group pleadings warranting dismissal of all claims against J&J and Ethicon. (*See id.* at 10.) Defendants' second contention similarly derives from their attack on alleged improper group pleadings. (*See id.* at 15-16.) This is because Defendants' second contention, that Plaintiff's allegations against Ethicon fail to meet the Rule 8(a)(2) pleading standard, relies on the Court accepting Defendants' assertion that the allegations against "Defendants" in the Amended Complaint are insufficient to put Ethicon on

8

notice of the allegations against it. (*See id.*) The Court finds that Plaintiff does not employ improper group pleadings, and as such, both J&J and Ethicon are on notice of the claims and allegations against them. Consequently, Defendants' first two contentions for dismissal are rejected.

To begin, Defendants correctly identify that a Complaint cannot "indiscriminately attribute wrongdoing to a group of defendants, leaving them to guess as to who allegedly did what." *Yu-Chin Chang v. Upright Fin. Corp.*, No. 19-18414, 2020 WL 473649, at *3 (D.N.J. Jan. 28, 2020). This sort of pleading would be considered an improper group pleading for good reason; under Rule 8, such a pleading "does not place [d]efendants on notice of the claims against each of them." *Id.* (quoting *Sheeran v. Blyth Shipholding S.A.*, No. 14-5482, 2015 WL 9048979, at *3 (D.N.J. Dec. 16, 2015)). Critically, however, not every pleading that groups two defendants together constitutes an impermissible group pleading. *See id.* (finding that while defendants were grouped together in the complaint, such grouping did not constitute an "impermissible group pleading" where the exact relationship between a corporate entity and an agent could not be ascertained by a plaintiff before discovery "but c[ould] easily be explored in discovery"); *see also D.W. by Renaud v. N.J. Div. of Child Prot. & Permanency*, No. 21-15789, 2023 WL 3626266, at *5 (D.N.J. May 24, 2023) (finding that while a plaintiff did at times summarily refer to defendants the court could still rely on "group pleadings that inferentially implicate" individual defendants such that the individual defendants "are on notice of the allegations against them"). To assess the distinction between a permissible and impermissible group pleading, a court must consider whether a pleading is "impermissibly vague" or otherwise "injects an inherently speculative nature into the pleadings, forcing both the [d]efendants and the Court to guess who did what to whom when." *Yu-Chin*, 2020 WL 473649, at *3 (quoting *Japhet v. Fancis E. Parker Mem'l Home, Inc.*, No. 14-1206, 2014 WL 3809173, at *2 (D.N.J. July 31, 2014)). Under Rule 8(a)(2), a group pleading is not "impermissibly

9

vague" where, when read in the context of other specific allegations, it is sufficient to put a defendant on notice that the grouped allegation is brought, at least in part, against the specific defendant. *See* Fed. R. Civ. P. 8(a)(2).

Here, both Defendants, individually and collectively, are on notice of what Plaintiff alleges against them. Importantly, the Amended Complaint is not exclusively comprised of group pleadings rendering the Amended Complaint vague. Rather, while the Amended Complaint certainly contains instances where Defendants are referred to collectively, the Amended Complaint is also replete with relevant allegations specifically against each Defendant. (*See generally* Am. Compl.)

With respect to J&J, i.e., the entity that Defendants primarily maintain is impermissibly grouped with Ethicon, specific relevant allegations, taken as true at this stage, include: (1) J&J hired Plaintiff in 2016 as a contract scientist on the Analytical Characterization team (*id.* ¶¶ 21, 27); (2) in October 2022, Plaintiff was selected to participate in J&J's Bridges Program, which required an employee to be employed by "J&J at least three years" (*id.* ¶¶ 36, 39); and (3) "J&J rationalized that paying a pregnant employee her full annual salary, despite upcoming leave was a business expense it wanted to avoid – notwithstanding federal and state laws mandating that doing so is unlawful" (*id.* ¶ 61). These allegations, read together with the other allegations averred in the Amended Complaint, clearly maintain that Plaintiff was employed by J&J and that J&J was involved in the decision to hire and terminate Plaintiff. As such, the Amended Complaint contains sufficient tailored allegations against J&J to put J&J on notice that references to "Defendants" wrongfully terminating Plaintiff are brought, at least in part, against J&J.

The above reasoning also does away with Defendants' second contention, i.e., that Plaintiff's claims against Ethicon are insufficient to meet the Rule 8(a)(2) pleading standard. In

support of this point, Defendants argue that Plaintiff, "in pleading her causes of action . . . utilizes the term 'Defendants' . . . and includes Ethicon in name only." (Defs.' Moving Br. 15.) This argument is nothing more than a restatement of Defendants' group pleading contentions. Ethicon is clearly on notice, as the entity that Plaintiff worked for at the time of her termination, that the allegations naming "Defendants" are directed, at least in part, at Ethicon. (*See* Am. Compl. ¶¶ 20, 27, 54.) This type of group pleading is sufficient when a plaintiff has not yet had the benefit of discovery to parse out which corporate entity may be responsible for which behavior (i.e. employment decision, termination decision, etc.), as is the case here. *See Yu-Chin*, 2020 WL 473649, at *3. As such, Ethicon is on notice that Plaintiff's allegations may apply against it depending on what information is uncovered in discovery, and accordingly, Defendants' second contention related to group pleadings fails.

        ii.    *J&J's Status as one of Plaintiff's "Employers"*

Next, Defendants cite a handful of cases within the Third Circuit to argue that the claims against J&J should be "summarily dismissed" because it never employed Plaintiff. (Defs.' Moving Br. 13-15 (collecting cases); Defs.' Reply Br. 8-9, ECF No. 30 (collecting cases).) Ultimately, Defendants appear to contend that because Plaintiff did not adequately allege facts to show that J&J and Ethicon are an "integrated enterprise," the claims against J&J should be dismissed because J&J, as a parent company, cannot fairly be said to be an employer. (Defs.'s Moving Br. 12-13.) The Court finds that Defendants failed to carry their burden of showing resolution of this issue is appropriate at this stage.

First, the motions in the cases that Defendants cite in their moving brief to support their position were either: (1) decided at the summary judgment stage; or (2) denied at the motion to dismiss stage. *Marzano v. Comput. Sci. Corp. Inc.*, 91 F.3d 497, 514 (3d Cir. 1996) (summary

judgment stage); *Martin v. Safeguard Scis., Inc.*, 17 F. Supp. 2d 357, 361-63 (E.D. Pa. 1998) (summary judgment stage); *Johnson v. Cook Composites & Polymers, Inc.*, No. 99-4916, 2000 WL 249251, at *4 (D.N.J. Mar. 3, 2000) (denying a defendant's motion to dismiss because assessing whether a parent company may qualify as an employer "involves a detailed fact driven analysis, [and therefore] prior to discovery, it would be inappropriate for the Court to evaluate whether [a defendant] can be held liable as an employer under Title VII and the NJLAD.").

Second, in Defendants' reply brief, while Defendants do cite at least one case dismissing a plaintiff's claims against a parent company at the motion to dismiss stage, that case, *Gunther*, is materially different from the case before this Court. (Defs.' Reply Br. 9 (citing *Gunther v. Shelter Grp.*, No. 13-4739, 2014 WL 3869940, at *9 (D.N.J. Aug. 7, 2014).) Specifically, in *Gunther*, like in the other cases that Defendants cite in their moving brief, the plaintiff sought to bring claims against a subsidiary company and parent company, but alleged that the *subsidiary*, not the *parent*, hired the plaintiff. *Gunther*, 2014 WL 3869940, at *3. Defendants, therefore, have only cited case law that suggests where a subsidiary allegedly hires an employee, the "integrated enterprise" test applies.

Here, Plaintiff alleges that J&J, Ethicon's alleged parent company, hired and fired her.[9] (Am. Compl. ¶ 6 ("J&J fired [Plaintiff]"); ¶ 21 ("J&J hired [Plaintiff] . . . .").)[10] As such, Defendants failed to demonstrate that the "integrated enterprise" test applies on the facts before the Court.[11] As such, Defendants fail to carry their burden of showing that Plaintiff's Amended Complaint should be dismissed because it contained insufficient allegations as to whether J&J and

---

[9] The Court notes that Plaintiff also alleges that Ethicon "hired" her in 2018. (Am. Compl. ¶ 27.) Construing the Amended Complaint in a light most favorable to Plaintiff, however, Plaintiff does not appear to allege that Plaintiff left J&J entirely when transitioning over to Ethicon. (*See generally id.*) This is evident where Plaintiff alleges that J&J hired Plaintiff in 2016 (*id.* ¶ 6), Plaintiff began with Ethicon in 2018 (*id.* ¶ 27), and Plaintiff was terminated by J&J in 2023 (*see id.* ¶¶ 6, 54). Also purporting to support this conclusion are Plaintiff's allegations that: (1) "[I]n October 2022 . . . Plaintiff[] [was on an] upward trajectory at J&J, [and] was selected to join the Bridges Program." (*id.* ¶ 36); (2) the Bridges Program, which she was accepted into, requires employees to be "employed at *J&J* [for] at least three years" (*id.* ¶ 39 (emphasis added)); and (3) while working for the "IP team" Plaintiff "identified a number of copycat devices of J&J products" which she reported to "J&J's in-house lawyers" (*id.* ¶ 41).) These allegations all suggest that Plaintiff was employed by J&J, to some extent, from 2016 to 2023.

[10] *Gunther* and all other case law Defendants cite apply "when a *subsidiary* hires employees." *Marzano*, 91 F.3d at 513. Only when the subsidiary is alleged to have hired an employee, as opposed to the parent company, is "there is a strong presumption that the subsidiary, not the parent company, is the employer." *Id.*

[11] Again, all case law Defendants cite in their briefing derives from *Marzano*, a Third Circuit case assessing a summary judgment motion. *Marzano*, 91 F.3d at 514. Defendants cite no examples of the Third Circuit applying the "integrated enterprise" test at the motion to dismiss stage. (*See generally* Defs.' Moving Br.; Defs.' Reply Br.) Instead, Defendants only cite persuasive authority to support this proposition, which is distinguished above. (*Id.*) Interestingly, *Marzano*, while setting forth the "integrated enterprise" standard, separately credits the Fourth Circuit's finding that if a parent company "could control the employment practices and decisions of the subsidiary [and] if the parent company hired and fired the subsidiary employees, routinely shifted them between the two companies, and supervised their daily operations, it would be hard to find that the parent company was not [a plaintiff's] employer." *Marzano*, 91 F.3d at 513 (quoting *Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 981 (4th Cir. 1987)). To this end, the Court notes that Plaintiff's Amended Complaint alleges that: (1) J&J maintained directives seeking to reduce workforce, which precipitated Plaintiff's termination from Ethicon (Am. Compl. ¶¶ 59, 65); (2) J&J was involved in the decision to terminate Plaintiff (*id.* ¶¶ 6, 54); (3) J&J hired and fired Plaintiff (*id.* ¶¶ 6, 21); and (4) Plaintiff shifted between J&J and Ethicon as a member of the Bridges Program (*id.* ¶¶ 36, 39, 41).

Ethicon are an "integrated enterprise." Accordingly, Defendants' motion to dismiss is denied in full.

### B. Rule 12(f) Motion to Strike

Finally, Defendants contend that certain allegations should be stricken pursuant to Rule 12(f). Under Rule 12(f), allegations can be stricken when they contain "redundant, immaterial, impertinent, or scandalous matter." *See* Fed. R. Civ. P. 12(f). While a court has broad discretion when considering Rule 12(f) motions, such motions "are disfavored and should generally be denied "'unless the allegations [sought to be stricken] have no possible relation to the controversy and may cause prejudice to one of the parties or . . . confuse the issues.""" *Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F. Supp. 3d 449, 459 (D.N.J. 2020) (quoting *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 609 (D.N.J. 2002)).

Here, Defendants contend that paragraphs one through five and seventy-five in the Amended Complaint are immaterial or impertinent. (Am. Compl. ¶¶ 1-5, 75.) These paragraphs relate generally to: (1) J&J's public statements with respect to hiring and empowering women; and (2) J&J's alleged "forced rankings" system, which J&J allegedly utilizes to perpetuate inherent bias against women. (*Id.*)

Defendants' motion to strike is denied. The challenged allegations are not clearly "immaterial" to Plaintiff's claims. (Defs.' Moving Br. 16.) Plaintiff alleges that she was wrongfully terminated because she was a pregnant woman entitled to certain medical benefits, which she ultimately was unable to receive. (*See generally* Am. Compl.) Therefore, facts relating to J&J's representations to prospective female employees may be relevant in considering why Plaintiff chose to disclose her pregnancy to her supervisors. Plaintiff's allegations as to an inherently biased ranking system at J&J are also relevant to Plaintiff's claims, because the existence of a ranking

system that punishes pregnant women may support a finding that she was discriminated against when she was discharged. As such, paragraphs one through five[12] and seventy-five are not "immaterial" or "impertinent" as Defendants suggest. (Defs.' Moving Br. 18.) Accordingly, and because Rule 12(f) motions are disfavored and this Court has considerable discretion in resolving them, Defendants' motion to strike is denied.

IV. **CONCLUSION**

For the reasons outlined above, Defendants' motion to dismiss is denied in its entirety.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[12] Even if paragraphs one through five were immaterial, striking the allegations would still not be appropriate because the paragraphs transcribe publicly accessible material, and as such, those paragraphs are not prejudicial to Defendants. (*See* Am. Compl. ¶¶ 1-5.)

15